IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**SHANA LINDO**                                                                                           **PLAINTIFF**

**VS.**                                                                       **CIVIL ACTION NO.:** 1:23cv260 LG-BWR

**SUN LOAN COMPANY ALABAMA, INC.;
FIRST PREMIER BANK; CREDIT CENTRAL, LLC.;
COVINGTON CREDIT OF ALABAMA, INC.;
NATIONAL CREDIT ADJUSTERS, LLC
EQUIFAX INFORMATION SERVICES, LLC;
EXPERIAN INFORMATION SOLUTIONS, INC.;
AND JOHN DOES 1-10**                                                                **DEFENDANTS**

## COMPLAINT – Jury Trial Demanded

COMES NOW, the Plaintiff, Shana Lindo (hereinafter "Lindo" or "the Plaintiff") by and through undersigned counsel and files this Complaint against the Defendants for violations of the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq*. (hereinafter "the FCRA") and the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* (hereinafter "the FDCPA").

### Parties

1. Lindo is an adult resident of Harrison County, Mississippi, and is a "Consumer" as defined by both the FCRA and the FDCPA.

2. Sun Loan Company Alabama, Inc. ("Sun Loan") is a Texas corporation that is not registered to conduct business under Mississippi law.  It may be served with process by certified mail addressed to "Any Officer or Agent for Service" at the company's principal place of business: 254 Spencer Lane, San Antonio, TX 78201.

3. In this instance, Sun Loan is a "furnisher" as defined by the FCRA.

4. First Premier Bank (First Premier) is a federally insured depository institution with its principal address at 500 S Minnesota Ave. Sioux Falls, SD 57104. It may be served with process by certified mail addressed to an officer of the bank.

5. In this instance, First Premier is a "furnisher" as defined by the FCRA.

6. Credit Central, LLC ("Credit Central") is a South Carolina Limited Liability Company that is not registered to conduct business under Mississippi law. It may be served with process by certified mail addressed to its registered agent, James Walters at 700 E. North St., Suite 15, Greenville, SC 29601.

7. In this instance, Credit Central is a "furnisher" as defined by the FCRA.

8. Credit Central utilizes the instrumentalities of interstate commerce in its business – the principle purpose of which is the collection of debts owed or formerly owed to third parties.

9. Covington Credit of Alabama, Inc. ("Covington Credit") is an Alabama Corporation that is not registered to conduct business under Mississippi law. It may be served with process by certified mail addressed to its registered agent, Corporation Service Company, Inc. at 641 South Lawrence St. Montgomery, AL 36104.

10. In this instance, Covington Credit is a "furnisher" as defined by the FCRA.

11. National Credit Adjusters, LLC ("NCA") is a Kansas Limited Liability Company. It is registered to conduct business in Mississippi and may be served with process by service upon its registered agent, Corporation Service Company, at 109 Executive Dr. Suite 3, Madison, MS 39110.

12. In this instance, NCA is a "furnisher" as defined by the FCRA.

13. Furthermore, NCA is a "debt collector" as that term is defined by the FDCPA as it utilizes the instrumentalities of interstate commerce in its principal business which is the collection of debts owed or purportedly owed to third parties.

14. Sun Loan, First Premier, Credit Central, Covington Credit, and NCA are sometimes collectively referred to as "the furnishers" throughout this Complaint.

15. Equifax Information Services, LLC ("Equifax") is a Georgia Limited Liability Company that may be served through its registered agent, Corporation Service Company at 7716 Old Canton Rd. Suite C. Madison, MS 39110.

16. Equifax is a "Consumer Reporting Agency" as that term is defined by 15 U.S.C. §1681(f).

17. Experian Information Solutions, Inc. ("Experian") is an Ohio corporation that may be served through its registered agent, CT Corporation System, 645 Lakeland east Dr. Suite 101, Flowood, MS 39232.

18. Experian is a "Consumer Reporting Agency" as that term is defined by 15 U.S.C. §1681(f).

19. Throughout this Complaint, Experian and Equifax are sometimes collectively referred to as "the Credit Reporting Agencies."

20. John Does 1-10 are fictitious names of individuals and businesses alleged for the purpose of substituting names of Defendants whose identities will be disclosed in discovery and should be made parties to this action.

## Jurisdiction and Venue

21. This Court has jurisdiction pursuant to 15 U.S.C. §1681p and 28 U.S.C. §§1331, 1337 and 1367. This jurisdiction includes supplemental jurisdiction with respect to any pendent state law claims.

22. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the Plaintiff's asserted claims.

## Facts

23. Prior to the filing of this action, Lindo incurred various debts to the furnishers or their predecessors in interest.

24. Each of the furnishers provided information to the Consumer Reporting Agencies regarding the Plaintiff's loan history.

25. The Consumer Reporting Agencies published this information in the Plaintiff's Consumer Reports.

26. §1681c of the Fair Credit Reporting Act requires that Consumer Reporting Agencies refrain from reporting collection accounts that are older than seven (7) years.

27. The Fair Credit Reporting Act further requires that Consumer Reporting Agencies maintain procedures designed to assure "maximum possible accuracy". 15 U.S.C. §1681c.

28. Under Mississippi Code §15-1-3, the running of a statute of limitations extinguishes the right as well as the remedy regarding debt. It is well established that the statute of limitations in this state is not merely an affirmative defense, instead the debt is "extinguished" once the statute has run. *Greene v. Greene*, 145 Miss. 87, 110 So. 218, 222-23 (Miss. 1926). "[T]he account ceases to be a debt. It is completely extinguished by the statute of limitation . . . ." Id. at 223; see also, H*awkins v. S. Pipe & Supply Co.*, 259 So. 2d 696, 697 (Miss. 1972); *Proctor v. Hart*, 72 Miss. 288, 16 So. 595, 596 (Miss. 1894). The Supreme Court of the United State has even noted the unique effect of Miss. Code §15-1-3 compared to other states. *See, Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407,

1412 (2017) (noting "expiration of the limitations period extinguishes the remedy and the right.").

29. The most recent Credit Reporting Resource Guide – a guide published by the Consumer Data Industry Association ("CDIA") provides that debts that are extinguished under state law should be reported as having a $0 balance and should have a Metro 2 Comment Code of DE- Debt Extinguished.[1]

30. Lindo applied for credit recently but was denied due to numerous delinquent accounts reported on her credit report.

31. Some of the accounts were reported despite the fact that the accounts were assigned for collection more than seven years prior to the generation of Lindo's consumer reports.

32. Other accounts were reported to have a balance greater than $0 and without a "DE-Debt Extinguished" comment code – even though the debts were extinguished by state law.

33. Due to the presence of these derogatory accounts on her consumer reports, Lindo was subjected to higher interest rates for credit than she would have been if the derogatory information was not reported.

34. Due to inaccurate and derogatory information on her consumer credit reports, Lindo was discouraged from applying for mortgage loans, auto loans, or other debt that would have allowed her to acquire equity in a home or automobile.

35. Lindo tried to dispute the accounts herself, but Lindo's actions were not effective at correcting the errors on her consumer reports and she eventually retained an attorney to try to resolve the issues on her consumer reports.

---

[1] The DE- Debt Extinguished Comment Code was established after a 2016 settlement between the Mississippi Attorney General, TransUnion, Equifax, and Experian that required each of the Credit Reporting Agencies to work with the Credit Data Industry Association to establish a more accurate way to report debts extinguished pursuant to laws like Mississippi Code §15-3-1.

36. In June 2023, Lindo - through Counsel - sent letters to each of the Credit Reporting Agencies disputing various accounts on her consumer credit reports ("the Disputes").

37. In June 2023, Lindo – through counsel – also sent a letter to Trans Union, LLC – another Consumer Reporting Agency.

38. Upon receipt of the disputes by Lindo, Equifax and Experian had a duty to conduct a reasonable investigation of the disputed information pursuant to 15 U.S.C. §1681i(a)(1).

39. Upon information and belief, the Credit Reporting Agencies each notified each of the Furnishers of the disputes as required by 15 U.S.C. §1681i(2).

40. Alternatively, Experian or Equifax failed to notify each of the Furnishers of the disputes by Lindo.

41. In response to Lindo's June 2023, disputes, Equifax and Experian made some changes to Lindo's consumer reports, but did not remove the accounts from Sun Loan, First Premier, Credit Central, or Covington Credit.

42. Trans Union, LLC responded to the disputes related to its report by properly investigating the disputes and removing the derogatory information.

43. With respect to the debts purportedly owed to Covington Credit and Credit Central, the accounts were charged off more than seven years before the disputes and should have not been reported.

44. With respect to the Sun Loan and First Premier accounts, the accounts were stale and should have been reported as extinguished under state law.

45. Even if the debts were incurred outside of Mississippi, Mississippi law governs because of the Plaintiff's residency.

46. The dispute letters sent by Lindo's attorney clearly explained that the reported information was inaccurate balance of the debt should have been reported as $0. "[T]he account ceases to be a debt. It is completely extinguished by the statute of limitation . . . ." *Greene v. Greene*, 145 Miss. 87, 110 So. 218, 222-23 (Miss. 1926).[2]

47. The dispute letters further stated that some of the information reported was obsolete due to the fact that the information was older than seven years old.

48. The reporting of the stale accounts should also have featured a DE – Debt Extinguished Comment Code pursuant to credit reporting guidelines designed to assure maximum accuracy of consumer credit reporting.

49. Correcting this information to comply Lindo's dispute would not prevent the Equifax and Experian from reporting accurate information regarding past delinquencies, instead the dispute was narrowly tailored to correct the inaccurate information about the collection status and current balance due.

50. The information furnished by Furnishers to Equifax show that the debts are each over three years in age and that no payments were made within the past three years.

51. The information furnished by Furnishers to Experian show that the debts are each over three years in age and that no payments were made within the past three years.

52. The information reported by Furnishers to the Credit Reporting Agencies coupled with the information provided by the Plaintiff's disputes was sufficient for the Credit Reporting

---

[2] See i.e. *Strohbehn v. Access Grp. Inc.*, 292 F. Supp. 3d 819, 832 (E.D. Wis. 2017)(holding that a Debt Collector's credit reporting was directed at non-existent debts". Wisconsin and Mississippi are the only two states in which the expiration of a statute of limitations extinguishes the right and the remedy associated with a debt. *See, i.e. Pantoja v. Portfolio Recovery Assocs., LLC,* 852 F.3d 679, 684 (7th Cir. 2017) (discussing Wisconsin's statute of limitations which has been described by the United States Supreme Court as the same. *See, Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407, 1412 (2017)).

Agencies to conclude that the debts were extinguished by state law and that the reporting by the Furnishers was inaccurate.

53. Upon receipt of the disputes by Lindo's attorney, the Credit Reporting Agencies had a duty to conduct a reasonable investigation to determine the accuracy of the disputed account pursuant to 15 U.S.C. §1681i(a)(1).

54. Equifax and Experian failed to perform a reasonable reinvestigation of the disputes.

55. Following the disputes, each of the Credit Reporting Agencies continue to report most of the inaccurate information that was subject of the disputes.

56. Accordingly, the Credit Reporting Agencies failed in their obligations under 15 U.S.C §1681i to conduct a reasonable investigation into the disputes and to correct the inaccurate information pursuant to said investigation.

57. 15 U.S.C. §1681s-2(b)(1) provides that after a Furnisher receives a credit reporting dispute from a Credit Reporting Agency, they shall perform the following steps:

> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
> (C) report the results of the investigation to the consumer reporting agency;
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
> (i) modify that item of information;
> (ii) delete that item of information; or
> (iii) permanently block the reporting of that item of information.

58. A reasonable investigation of the disputed information would have revealed that the reported information was inaccurate as was stated in Lindo's disputes.

59. Each of the Furnishers failed to update the inaccurate information that it furnished to the Credit Reporting Agencies.

60. Each of the Furnishers continue to publish false information in an attempt to coerce Lindo into paying the expired debts.

61. Because of the Defendant's actions, Plaintiff has suffered actual damages including postage, attorneys' fees, and has been subjected to higher interest rates and denials of credit.

62. Despite numerous opportunities to verify the debt and correct its errors prior to the filing of this Complaint, the Credit Reporting Agencies and Furnishers have failed to update and properly report the above accounts.

63. As a result, Lindo was forced to retain counsel to address these issues and ultimately file this complaint.

64. Sun Loan and First Premier each failed to conduct a reasonable investigation pursuant to the Fair Credit Reporting Act. If they had done so, they would have furnished information showing a $0.00 balance and that the purported debt was extinguished.

65. Credit Central and Covington Credit each failed to conduct a reasonable investigation pursuant to the Fair Credit Reporting Act. If they had done so, they would have removed all of the reported information as obsolete.

66. Equifax failed to conduct reasonable reinvestigation regarding the information furnished by the Furnishers. There was sufficient information between the information provided by

the Furnishers and the information provided by Lindo's disputes to allow Equifax to conclude that the accounts should have been removed or reported differently.

67. Experian failed to conduct reasonable reinvestigation regarding the information furnished by the Furnishers. There was sufficient information between the information provided by the Furnishers and the information provided by Lindo's disputes to allow Experian to conclude that the accounts should have been removed or reported differently.

68. The Credit Reporting Agencies and the Furnishers failed to follow the procedures that Congress laid out in the FCRA regarding disputed information and further failed to abide by the CDIA Credit Reporting Resource Guide.

69. The Furnishers continue to furnish information that is wrong and negatively impacting Lindo's credit.

70. As a result of this negative information on her Consumer Reports, Lindo has experienced a lower credit rating which impacts her ability to obtain credit or financing.

71. Specifically, Lindo applied for credit and was subjected to higher interest rates due to her low credit rating.

72. Lindo has incurred monetary damages in the form of postage and attorneys' fees in her attempts to have the Credit Reporting Agencies update the false and derogatory information on her reports.

73. Lindo has suffered additional economic damage from the denial of credit opportunities and the increased cost of credit due to the reporting of this information by the Credit Reporting Agencies.

74. Lindo has suffered emotional distress from the mental and emotional impact of having a low credit rating due to the actions of the Credit Reporting Agencies and the Furnishers in the reporting and furnishing of false and derogatory credit information.

### Count I: Sun Loan, First Premier, Credit Central, NCA, and Covington Credit Violated the Fair Credit Reporting Act

75. All of the foregoing paragraphs are realleged and incorporated herein by this reference.

76. The Furnishers furnished negative information regarding Lindo to Equifax and Experian.

77. §1681s-2(a)(1) of the FCRA prohibits the furnishing of erroneous information to Credit Reporting Agencies if the Furnisher knows or has reason to know that the information is inaccurate.

78. §1681s-2(a)(2) of the FCRA requires Furnishers of information to Credit Reporting Agencies to promptly notify Credit Reporting Agencies if they determine that information they have provided is not complete or accurate.

79. §1681s-2(b) of the FCRA requires Furnishers of information to Credit Reporting Agencies to conduct an investigation in accordance with the terms of §1681i(a)(1) when the Furnisher receives a notice of dispute from a Credit Reporting Agency and to report the results of that investigation to the Credit Reporting Agency.

80. Plaintiff through counsel disputed with Equifax and Experian the negative reporting of account(s) and counsel thoroughly explained why the account(s) were wrongly reported under Mississippi law.

81. This dispute contained all relevant information regarding the dispute including that the accounts must show a $0 balance and should have a DE – Debt Extinguished Metro 2 Comment Code.

82. Sun Loan received notification of the dispute.

83. First Premier received notification of the dispute.

84. Credit Central received notification of the dispute.

85. NCA received notification of the dispute.

86. Covington Credit received notification of the dispute.

87. Sun Loan responded to the dispute in a manner that left the derogatory account information on Lindo's Credit Reports.

88. First Premier responded to the dispute in a manner that left the derogatory account information on Lindo's Credit Reports.

89. Credit Central responded to the dispute in a manner that left the derogatory account information on Lindo's Credit Reports.

90. NCA responded to the dispute in a manner that left the derogatory account information on Lindo's Credit Reports.

91. Covington Credit responded to the dispute in a manner that left the derogatory account information on Lindo's Credit Reports.

92. The negative information continues to be reported.

93. As a result of the dispute, Sun Loan knew or should have known that the information it furnished to Equifax and/or Experian was inaccurate.

94. As a result of the dispute, First Premier knew or should have known that the information it furnished to Equifax and/or Experian was inaccurate.

95. As a result of the dispute, Credit Central knew or should have known that the information it furnished to Equifax and/or Experian was inaccurate.

96. As a result of the dispute, NCA knew or should have known that the information it furnished to Equifax and/or Experian was inaccurate.

97. As a result of the dispute, Covington Credit knew or should have known that the information it furnished to Equifax and/or Experian was inaccurate.

98. If the Furnishers had conducted a meaningful investigation of Lindo's credit reporting dispute, there would be no outstanding balance reported.

99. Accordingly, Sun Loan, First Premier, Credit Central, NCA, and Covington Credit violated §1681s-2(b) of the FCRA with respect to Lindo.

100. Lindo has suffered actual financial damages as a result of the Furnishers' violations of the FCRA as evidenced by denial of credit letters and by higher interest rates.

101. The Furnisher's actions were willfully noncompliant with their duties under §1681s-2(b) to conduct a meaningful investigation upon notification of a credit reporting dispute and to modify incorrect information.

102. Lindo has suffered emotional distress as a result of the Furnishers' violations of the FCRA.

103. As a result of this negative information on her Consumer Reports, Lindo has experienced a lower credit rating which impacts her ability to obtain credit or financing.

104. Because of the Furnishers' willful violations of §1681s-2(b) of the FCRA, Lindo is entitled to statutory damages of $1,000.00 for each violation, as well as actual damages, punitive damages, and attorneys' fees pursuant to 15 U.S.C. §1681n.

105. In the alternative, because of the Furnishers' negligent violations of the FCRA, Lindo is entitled to actual damages, and attorneys' fees pursuant to 15 U.S.C. §1681o.

### Count II: NCA violated the Fair Debt Collection Practices Act

106. All of the foregoing paragraphs are realleged and incorporated herein by this reference.

107. NCA uses the instrumentalities of interstate commerce in its business, the principal purpose of which is the collection of debts.

108. NCA is a "debt collector" as defined by 15 U.S.C. §1692a.

109. Lindo is a natural person allegedly obligated to pay debts to NCA or to its clients.

110. Lindo is a consumer as defined by 15 U.S.C. §1692a.

111. Each of the accounts reported by NCA is a "Debt" as defined by §1692a(4) of the FDCPA as it is an "obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes."

112. The reporting of a debt to Equifax and Experian by NCA is an attempt to collect that debt.

113. Because the debt(s) are over 3 years old, the right and remedy has been extinguished and therefore any furnishing of information on those accounts that does not state the balance as $0 or includes "in collections" or "past due" is a false representation under 15 U.S.C. § 1692e.

114. Because the debt(s) is beyond the statute of limitations, the reporting of the debt(s) by NCA as "in collections", a balance of more than $0, and or being "past due" is a false representation regarding the amount, character, and legal status of the debt(s).

115. NCA further misrepresented the "date opened" for this account to one or more Consumer Reporting Agency.

116. The actions of NCA in falsely representing the character, amount, and legal status of this debt are in violation of §1692e(2) of the FDCPA.

117. NCA violated §1692d of the FDCPA by engaging in conduct the natural consequences of which was to harass, oppress, or abuse any person in connection with the collection of a debt. Specifically, NCA's actions in reporting the debt(s) and debt status that it knew or

had reasonable cause to believe was inaccurate violated the FCRA 15 U.S.C. §1681s-2(a) and the rights of the Plaintiff.

118. Lindo has suffered actual financial damages as a result of NCA's violations of the FDCPA including costs associated with certified mail, postage, and attorneys' fees.

119. As a result of this negative information on her Consumer Reports, Lindo has experienced a lower credit rating which impacts her ability to obtain credit or financing.

120. Lindo suffered emotional distress as a result of the violations of the FDCPA by NCA.

121. As a result of the above violation of the FDCPA, NCA is liable to Lindo for actual damages, statutory damages up to $1,000.00, and attorney's fees pursuant to 15 U.S.C. §1692k.

### Count III: As to Defendants: Equifax and Experian
### The Credit Reporting Agencies Violated the Fair Credit Reporting Act.

122. All of the foregoing paragraphs are realleged and incorporated herein by this reference.

123. 15 U.S.C. §1681i(a)(5)(B)(ii) requires a Credit Reporting Agency to provide notice to a consumer if previously deleted information is later reinserted into the consumer's file.

124. 15 U.S.C. §1681i(a)(1) provides that upon notification of a dispute to the accuracy of information contained in a Consumer Report, that the Credit Reporting Agency will "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate."

125. Lindo – through counsel – initiated a dispute with the Credit Reporting Agencies regarding the reporting of her NCA account.

126. The disputes contained all relevant information.

127. Upon initiation of the dispute, the Credit Reporting Agencies had a duty to conduct a reasonable investigation into the purported debt.

128. The information furnished by NCA alone was sufficient to determine that the statute of limitations had ran with respect to each of the accounts furnished by NCA.

129. A reasonable investigation would have revealed to Equifax and Experian that the debts to NCA were beyond the three-year statute of limitations and thus could not be reported as more than a $0 balance, and that the DE- Debt Extinguished Metro 2 Comment Code should be utilized along with the reporting – as stated in Lindo's dispute.

130. A reasonable investigation would have further informed the Credit Reporting Agencies that some of the accounts were obsolete – as the most recent account information was greater than seven years old.

131. Negative and inaccurate information regarding the Furnisher's accounts continues to be reported.

132. Accordingly, the Credit Reporting Agencies violated 15 U.S.C. §1681i with respect to Lindo by failing to conduct a reasonable investigation into Lindo's disputes.

133. Equifax fails to utilize a dispute notification system capable of notifying furnishers that consumer disputes are with respect to allegedly extinguished debts.

134. Experian fails to utilize a dispute notification system capable of notifying furnishers that consumer disputes are with respect to allegedly extinguished debts.

135. Each of the Credit Reporting Agencies have failed to maintain reasonable procedures to ensure maximum possible accuracy of Lindo's consumer reports as required by 15 U.S.C. §1681e.

136. Each of the Credit Reporting Agencies have failed to follow reasonable procedures to ensure maximum possible accuracy of Lindo's consumer reports as required by 15 U.S.C. §1681e.

137. Lindo has suffered actual financial damages as a result of the Credit Reporting Agencies violations of the FCRA.

138. The Credit Reporting Agencies actions were willfully noncompliant with their duties under §1681i to conduct a meaningful investigation upon notification of a credit reporting dispute and to modify incorrect information.

139. Lindo has suffered emotional distress as a result of the Credit Reporting Agencies' violations of the FCRA.

140. As a result of this negative information on her Consumer Reports, Lindo has experienced a lower credit rating which impacts her ability to obtain credit or financing.

141. Because of the Credit Reporting Agencies' willful violations of the FCRA, Lindo is entitled to statutory damages of $1,000.00 for each violation, as well as actual damages, punitive damages, and attorneys' fees pursuant to 15 U.S.C. §1681n.

142. In the alternative, because of the Credit Reporting Agencies' negligent violations of the FCRA, Lindo is entitled to actual damages, and attorneys' fees pursuant to 15 U.S.C. §1681o.

**WHEREFORE,** the Plaintiff having set forth her claims for relief against the Defendants respectfully pray of the Court as follows:

A. That the Plaintiff recover against all of the Defendants a sum to be determined by the Court in the form of actual damages for Defendants' violations of the FCRA.

B. That the Plaintiff recover against all of the Defendants $1,000.00 in the form of statutory damages for each of the Defendants' violations of the FCRA.

C. That the Plaintiff recover against all of the Defendants a sum to be determined by the Court in the form of actual damages awardable under the FCRA;

D. That the Plaintiff recover against NCA $1,000 in statutory damages for their violations of the FDCPA;

E. That the Plaintiff recover against all of the Defendants, jointly and severally, all reasonable legal fees and expenses incurred by their attorney as authorized under the FCRA; and

F. That the Plaintiff have such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Respectfully Submitted,

Shana Lindo

By Counsel:   /s/Michael T. Ramsey
Michael T. Ramsey, MSB #104978
SHEEHAN & RAMSEY, PLLC
429 Porter Avenue
Ocean Springs, MS 39564
MS Bar No. 104978
(228) 875-0572 Fax: (228) 875-0895
Mike@sheehanramsey.com